IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEBRASKA

FILED
U.S. DISTRICT COURT
DISTRICT OF NEBRASKA
10 AUG 26 PM 2:49
OFFICE OF THE CLERK

| | |
|---|---|
| In Re:<br><br>DeWayne K. Long,<br><br>    Debtor | Case No. 8:10-CV-00250-JFB<br><br>On Appeal from:<br>The United States Bankruptcy Court<br>For The District of Nebraska<br><br>Judge Below:<br>Honorable Thomas L. Saladino, *U.S.B.J.*<br><br>Chapter 13<br>Case No. BK 09-82347 |

## APPELLANT'S OPENING BRIEF

DeWayne K. Long
P.O. Box 3
Ashland, Nebraska 68003
(402) 871-3370

# TABLE OF CONTENTS

|  | Page |
|---|---|
| TABLE OF CONTENTS | 1 |
| TABLE OF AUTHORITIES | 2 |
| BASIS OF APPELLATE JURISDICTION | 3 |
| STATEMENT OF ISSUES PRESENTED | 3 |
| STANDARD OF APPELLATE REVIEW | 3-4 |
| STATEMENT OF THE CASE | 5 |
| STATEMENT OF FACTS | 6-9 |
| ARGUMENT | 10-14 |
| CONCLUSION AND RELIEF SOUGHT | 15 |
| CERTIFICATE OF SERVICE | 16 |

# TABLE OF AUTHORITIES

CASES:

| | Page |
|---|---|
| *Granite Reinsurance Co., Ltd. v. Acceptance Insurance Co.* | 2 |
| *In re Western Iowa Limestone, Inc.*, 538 F.3d 858, 862 (8th Cir. 2008) | 2 |
| *Capital One Auto Fin. v. Osborn*, 515 F.3d 817, 821 (8th Cir. 2008)) | 2 |
| *In re Zepecki*, 277 F.3d 1041, 1045 (8th Cir. 2002) | 2 |
| *Tri-State Financial, LLC v. First Dakota Nat'l Bank,* 538 F.3d 920, 924 (8th Cir. 2008) | 2 |
| *Darst-Webbe Tenant Ass'n Bd. v. St. Louis Housing Auth.,* 339 F.3d 702, 710-11 (8th Cir. 2003) | 2 & 13 |
| *In re Kaelin*, 308 F.3d 885, 889 (8th Cir. 2002) | 3 & 13 |

CODE SECTIONS:

| | Page |
|---|---|
| *Neb. U.C.C. § 1-101* | 10 |
| *Neb. U.C.C. § 3-309* | 10 |
| *Neb. U.C.C. § 3-109* | 12 |
| *Neb. U.C.C. § 3-302* | 12 |
| *Neb. U.C.C. §3-303* | 12-13 |

1.   **Basis of Appellate Jurisdiction:**

DeWayne K. Long, ("Debtor"), appeals the Order of May 4, 2010, granting the Trustee's Motion to Dismiss, which was made final by the subsequent Order of June 8.

The United States District Court for the District of Nebraska has jurisdiction pursuant to 28 U.S.C. § 158(a)(1), which provides, "[D]istrict courts of the United States shall have jurisdiction to hear appeals (1) from final judgments, orders, and decrees."

Jurisdiction is also established by Rule 8001(a) & (e) of The Bankruptcy Rules.

2.   **Statement of Issues Presented:**

I.   The Bankruptcy Court erred by not granting Debtor's Motion for Reconsideration, filed May 12, 2010, as discovery was not complete.

II.   The Bankruptcy Court erred, as a matter of law and fact, by making a determination of "secured" and "unsecured" debt without sufficient facts in evidence. Without discovery being complete, there were insufficient facts in evidence.

3.   **Standard of Appellate Review:**

Pursuant to Rule 8013 of The Bankruptcy Rules, the District Court may "affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings." In bankruptcy appeals, the District Court reviews findings of fact under a "clearly erroneous" standard and legal conclusions under a de novo standard. Mixed questions of law and fact are reviewed under a de novo standard.

See *Granite Reinsurance Co., Ltd. v. Acceptance Insurance Co.* " 'In an appeal from the BAP, this court [Eight Circuit Court of Appeals] sits as a second court of review, reviewing [the bankruptcy court's] findings of fact for clear error and [its] conclusions of law de novo.' " *In re Western Iowa Limestone, Inc.*, 538 F.3d 858, 862 (8th Cir. 2008) (quoting *Capital One Auto Fin. v. Osborn*, 515 F.3d 817, 821 (8th Cir. 2008)). See also, *In re Zepecki*, 277 F.3d 1041, 1045 (8th Cir. 2002) (per curiam) (citation omitted). "[W]e review the bankruptcy court's interpretation of a contract de novo." *Tri-State Financial, LLC v. First Dakota Nat'l Bank*, 538 F.3d 920, 924 (8th Cir. 2008) (citation omitted). *Granite*, "We may affirm the bankruptcy court on any ground supported by the record." When the record does not support the findings of fact or conclusions of law reached by Bankruptcy Court, its order and decision must be rejected.

See also *Debold v. Case*, "Like the BAP, we review for clear error the bankruptcy court's factual findings, and we review de novo the bankruptcy court's legal conclusions, as well as its conclusions involving mixed questions of law and fact. *Darst-Webbe Tenant Ass'n Bd. v. St. Louis Housing Auth.*, 339 F.3d 702, 710-11 (8th Cir. 2003). "A finding is clearly erroneous when although there is evidence to support it . . . the reviewing court is left with the definite and firm conviction that a mistake has been committed." *In re Kaelin*, 308 F.3d 885, 889 (8th Cir. 2002) (quotations omitted).

## 4. Statement of the Case:

Debtor filed a Chapter 13 Voluntary Petition in the United States Bankruptcy Court for the District of Nebraska on September 3, 2009. Doc. #1[1]

After dismissal on October 2, for failure to timely file a Chapter 13 Plan, and reinstatement on October 30, Debtor filed a Chapter 13 Plan on November 5. Doc. #12

After Objection(s) to Confirmation of the Plan by various *alleged* Creditors, various Resistance(s) and Objection(s) to Creditor Claims filed by the Debtor, a *first* Amended Chapter 13 Plan was filed on December 29, 2009. Doc. #43

And, after further Objection(s) to Confirmation, Resistance(s) and Objection(s), a *second* Amended Chapter 13 Plan was filed on February 4, 2010. Doc. #76

---

1  "Doc. #1" refers to the Record on Appeal filed simultaneously with this Opening Brief.

5. **Statement of the Facts:**

The Bankruptcy Court convened a telephonic conference with counsel and the counsel for creditors on April 13, 2010 (T-1). Counsel for the debtor addressed the court and made a showing that there were discovery matters outstanding and that the bankruptcy court should continue the other motions until discovery could be concluded (T-4). Debtor's counsel indicated that opposing counsel did not oppose the continuance (T-4). The court inquired as to what issues were being addressed in the discovery (T-6). Debtor's counsel replied that he had sought information regarding whether the promissory notes had been securitized, whether the correct parties had filed proof of claims, whether the security had been properly assigned (T-6-7). The court then inquired whether counsel had gone "to that debtor's boot camp filed by that guy out in North Carolina or--" and then continued:

> " I'm choosing my words carefully here. And maybe not so carefully. I don't know. I'm not a big fan of games, and I recognize that lenders sometime have documentation problems in proving their chain of title to the note or what have you. But understand one thing. In Nebraska, a note that's endorsed in blank is bearer paper, actually, under the

UCC. A promissory note endorsed in blank becomes bearer paper. So whoever says they have that note is the owner and holder of that note. Nebraska has substantial case law that provides that the security follows the note. So the mortgage, the deed of trust, whatever it is, follows the note. If somebody can stand up and say I got the note, then they've got the security interest regardless of how fouled up the chain of title might be. It would be real nice if the chain of title were laid out clearly. I wholly agree. And, in fact, I'm sure it can be done, and -- but what I don't like is games to simply delay and delay and further delay. So I don't -- my suspicion is we're not going to get very far challenging this whole securitization thing, challenging the whole who's the holder of the note, MERS, or whoever it might be. I really don't think we're going to get very far. **You've got the absolute right to pursue it.** I'm just not a big fan of it, and I'm just kind of stating that for your edification in case you didn't know. I will make sure the lenders do what they have to do, of course. The key here is we've got a motion to

dismiss by the Trustee that says you're over the debt limits.

So how is it you're going to get past that one?" (T-7-8).

(Emphasis added).

An attorney for one of the creditors suggested that perhaps the court could order a show cause hearing to allow the debtor to demonstrate that he could exclude enough debt for his case to continue (T-15). The court denied the motion to continue the hearing and, despite the outstanding discovery, ordered the debtor to show his basis to exclude enough debt to fall below the debt limit for Chapter 13 (T-17). The court proceeded to discuss the various individual claims and specifically addressed the alleged indebtedness on the debtor's residence. The alleged indebtedness claimed was $849, 780.00 (T-22). The court asked debtor's counsel to show where the debtor had disputed the indebtedness (T-23). Debtor's counsel referred the court to filling number 61 where the court had disallowed the claim (T-23). [The court later reconsidered this action pursuant to filing number 87 for improper notice (T-25).] The debtor also offered Document 162 wherein the debtor requested an opportunity to view the original promissory note to examine his signature on the note. Debtor indicated that he could not confirm the promissory note or notes without examination of the original note (T-26).

Creditor's counsel indicated that they had attached **a copy** of the note to the original claim (T-27). The court then confirmed that the balance of the undisputed debts of the debtor totaled approximately $300, 000.00 and that the debt limit for matters filed before April 2010 was $336, 900.00 (T- 28). The court then clarified, "Okay, so if JP Morgan Chase Bank's claim is valid, then we're well over the debt limit" (T-28). Debtor's counsel argued that he should be afforded an opportunity to address issues of whether the creditor was a holder of the note, any securitization of the note, assignments of the security instrument (T-28). The court, despite the disputed status of the claim, indicated that it did not matter whether the debtor addressed those issues, because the debt was too high for the debt level (T-29).

The court indicated that because the debtor did not indicate that he had never signed promissory notes similar to the notes in question that the objection to the notes (regardless of whether the proper creditor was before the court) was insufficient (T-39). The court then granted the trustee's motion to dismiss (T-39). The court denied the debtor's motion for reconsideration.

**6.   Argument:**

**I.   The Bankruptcy Court erred by not granting Debtor's Motion for Reconsideration, as discovery was not complete.**

It is undisputed that discovery was not complete in this matter. The bulk of the discovery was due the next day after the hearing. The bankruptcy court refers to the issues that may arise from the discovery as "documentation problems" (T-7) and suggest that there could be possible issues as to the documentation, but concludes that the debtor would not prevail on these issues. The court's reference to the "debtors boot camp", and the subsequent revelation that the court does not appreciate "playing games" (T-6), reveal the court's conclusary attitude toward debtor's discovery rights.

Regardless of the source of the debtor's awareness of his rights a "documentation problem" may well mean the elimination of a creditor from the schedule. No where in the Nebraska Uniform Commercial Code, *Neb. U.C.C. 1 § 101 et. Seq.,* does the enforcer of a promissory note (whether a holder or a holder in due course) not have to "hold" the original note. [In actuality, there are provisions allowing collection on a lost or stolen note- *Neb. U.C.C. § 3-309-* but the proof of the entitlement to collect on the note and the requirement that the plaintiff provide protection or indemnity against other parties seeking to collect on

the same indebtedness, make a claim under a lost note an undesirable legal position. Moreover, no debtor claimed that they had lost the note.] The creditors produced copies of the note in their respective claims, but when the debtor asks to examine the original note he is rebuffed. The old adage that "you owe the money to somebody" does not articulate the current status of the law when that "somebody" does not file a proof of claim in bankruptcy court.

Essentially, the bankruptcy court indicated that the creditors had an extensive lead in the eighth inning, but declined to give the debtor the opportunity to avail himself of his last batting opportunity. The debtor is entitled to discovery, *Fed Rules of Civil Procedure*, and is entitled to assert the defenses that are available to him upon examination of the evidence.

This court is charged to review for clear error in the bankruptcy court's factual findings, and to review de novo the bankruptcy court's [**10] legal conclusions, as well as its conclusions involving mixed questions of law and fact. *Darst-Webbe Tenant Ass'n Bd. v.St. Louis Housing Auth., 339 F.3d 702,710-11 (8th Cir. 2003)*. "A finding is clearly erroneous when although there is evidence to support it . . . the reviewing court is left with the definite and firm conviction that a mistake has been committed." *In re Kaelin, 308 F.3d 885, 889 (8th Cir.2002)*.

**II.    The Bankruptcy Court erred, as a matter of law and fact, by making a determination of "secured" and "unsecured" debt without sufficient facts in evidence. Without discovery being complete, there were insufficient facts.**

The bankruptcy court properly related Nebraska law as to the negotiability of a promissory note, in that, a note endorsed in blank is considered bearer paper. *Neb. U.C.C. § 3-109*. The endorsement of the promissory note would indicate that the note had been passed on to another party. It would be reckless to endorse an instrument that the original holder wished to retain because of its negotiability. An examination of the original note would reveal whether the note had been endorsed. One could ascertain whether it had been endorsed in blank or even learn of an entire chain of owners that have held the note. Of course, had the note been passed from holder to holder, any one of the various holders could have made a copy of the note and attempt to make a claim in bankruptcy court under the bankruptcy court's relaxed standard. Making a claim in this fashion is akin to the debtor writing a check made out to cash, making a copy of that check and attempting to cash the check at the debtor's banking institution. In fact, it is not akin to that scenario, it is exactly like it.

Moreover, examination of the original note would aid in a determination of whether the current holder of the note is a holder in due course of the note, *Neb. U.C.C. § 3-302*, whether the holder paid consideration of the note, *Neb. U.C.C. §*

*3-303,* and whether any evidence of dishonor, *Neb. U.C.C. § 3-505,* was apparent. A provision of the Foreclosure Protection Act ( hereinafter "The Act"), *Neb. § 76-2710,* defines the holder of the prerequisite evidence of the debt, as "(1) The person who is the obligee of and who is in possession of an original evidence of debt; (2) The person in possession of an original evidence of debt together with the proper endorsement or assignment thereof to such person; (3) The person in possession of a negotiable instrument evidencing a debt which has been duly negotiated to such person or to bearer or indorsed in blank; or (4) The person in possession of an evidence of debt with authority, which may be granted by the original evidence of debt or deed of trust, to enforce the evidence of debt as an agent, a nominee, or a trustee or in a similar capacity for the obligee of the evidence of debt.", as a prerequisite to seeking foreclosure.

The bankruptcy court indicates that there is a long tradition of the security interest following the note, the Act was passed in 1965, and while that "tradition" is actually a statute, *Neb. § 76-1016,* the statute is difficult to reconcile with the statutory requirement that a beneficiary of a deed of trust must file notice of a successor with the courts. *Neb. § 76-1004.* Construed most favorably in the debtor's favor, the two statutes together require that upon every sale of the note, a notice of the change in trustee would be required to be filed with the courts. At the

very least an examination of the note would and it's various endorsements would reveal the proper party to make a claim in bankruptcy court.

Should the court interpret the two statues in a fashion that the possessor of a note would not have to register a change in beneficiary, the most liberal analysis of the two statutes would render the use of the word "transfer" to transfers to a holder in due course. Still examination of the note is required to prove the status of the claimant as the holder in due course.

Without discovery and without the facts of the case the bankruptcy court is left to speculate on the potential claims and the debtor is left with the argument of what he might have been able to show had he been given his due process rights and been able to conduct discovery. A court speculating on whether the claims are secured or unsecured without proper information is reckless and violative of the due process provisions of the *Fourteenth Amendment of the Constitution of the United States of America.*

## 7. Conclusion and Relief Sought:

For the foregoing reasons and authorities, Debtor – Appellant respectfully asks the United States District Court for the District of Nebraska to reverse Bankruptcy Court's Order of May 4, 2010, dismissing the Chapter 13 Petition, which was made final by the subsequent Order of June 8; and, to remand the case to Bankruptcy Court with instruction for full and complete discovery, and either dismiss Creditor claimants for lack of standing, or subject-matter jurisdiction, upon a finding that no valid Creditor exists, or no proof of claim has been brought to sustain a legal debt against Debtor, or affirm a Chapter 13 Plan to reorganize any legal debt that remains after proof of claim.

Respectfully submitted

Dated this 26th day of August, 2010

_____
DeWayne K. Long

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of Appellant's Opening Brief has been served upon the following, by regular mail, this _____ day of August, 2010:

Smith, Gardner, Slusky, Lazer, Pohren, & Rogers, L.L.P.
Attn: Shaun M. James
8712 West Dodge Road, #400
Omaha, Nebraska 68114
(402) 392-0101

Locher Pavelka Dostal Braddy & Hammes, L.L.C.
Attn: Matthew E. Eck
200 The Omaha Club
2002 Douglas Street
Omaha, Nebraska 68102
Phone: (402) 898-7000
Fax:    (402) 898-7130

| | |
|---|---|
| Patricia Fahey | Blaine E. Dickeson, NE #24048 |
| U.S. Trustee's Office | 6363 College Blvd. Suite 100 |
| 111 S. 18th Plaza | Overland Park, KS 66211 |
| Suite 1148 | (913) 663-7600 Ext. 211 |
| Omaha, Nebraska 68102 | |

Steffi A. Swanson
1902 Harlan Drive, Suite A
Bellevue, Nebraska 68005

_____
DeWayne K. Long